**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**MICHAEL EDWARD ALLEN**                                                     **PLAINTIFF**
**ADC #176724**

**V.**                             **NO. 4:24-cv-00175-JM-ERE**

**LAKITA DAVIS, *et al*.**                                                     **DEFENDANTS**

**RECOMMENDED DISPOSITION**

## I.     Procedure for Filing Objections

This Recommended Disposition ("RD") has been sent to United States

District Judge James M. Moody Jr. You may file written objections to all or part of

this RD. If you do so, those objections must: (1) specifically explain the factual

and/or legal basis for your objection; and (2) be received by the Clerk of this Court

within 14 days of the date of this RD. If you do not file objections, you may waive

the right to appeal questions of fact.

## II.     Background

*Pro se* plaintiff Michael Edward Allen, formerly an Arkansas Division of

Correction ("ADC") inmate, filed this civil rights lawsuit under 42 U.S.C. § 1983.

*Docs. 1, 7*. Mr. Allen is currently proceeding on medical deliberate indifference

claims against Defendants LPN Lakita Davis, LPN Shannon Hollie Bolling, and

LPN Lasha Carter in their individual capacities seeking money damages.[1]

---

[1] Because Mr. Allen's original complaint was deficient, the Court provided Mr. Allen an

On September 2, 2025, Defendants filed a motion for summary judgment, a brief in support, and a statement of undisputed facts arguing that they are entitled to judgment as a matter of law on Mr. Allen's claims against them. *Docs.40, 41, 42.* Defendants' motion focused on the medical care that Mr. Allen received in September and October 2023. After an earlier review of the complaint and amended complaint, as well as Mr. Allen's responses to the motion for summary judgment (*Docs. 46, 47*), I determined that Mr. Allen's claims arguably should not be limited to September and October 2023. As a result, I ordered Defendants to file a supplemental brief to address the medical care Defendants provided Mr. Allen through March 2024. *Doc. 52.* Defendants have now filed their supplemental brief and supplemental statement of undisputed facts. *Docs. 53, 54.* Mr. Allen has not responded to the supplemental brief or statement of undisputed facts, and the time to do so has passed. *Doc. 52.* The motion is now ripe for review.

For the following reasons, I recommend that Defendants' motion (*Doc. 40*) be granted.

---

opportunity to file an amended complaint clarifying his constitutional claims. *Doc. 6.* On April 1, 2024, Mr. Allen filed an amended complaint. *Doc. 7.*

The Court previously dismissed Mr. Allen's claims against the Arkansas Division of Correction, WellPath, and Holly, as well as his official capacity claims for money damages against Defendants Davis, Bolling, and Carter. *Docs. 8, 10.*

## III.    Discussion

### A.    Summary Judgment Standard

Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Once that has been done, the nonmoving party must come forward with specific facts demonstrating that there is a material dispute for trial. See FED. R. CIV. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). A party is entitled to summary judgment if -- but only if -- the evidence shows that there is no genuine dispute about any fact important to the outcome of the case. See FED. R. CIV. P. 56; *Odom v. Kaizer*, 864 F.3d 920, 921 (8th Cir. 2017).

### B.    Undisputed Factual Evidence[2]

In September 2023, Mr. Allen was transferred to ADC custody. *Doc. 7 at 4.* At the time of his transfer, Mr. Allen had a history of myocardial infarction,

---

[2] Unless otherwise specified, these facts are taken from: (1) Dr. Nicholas Gowen's affidavit (*Doc. 42-1*); and (2) Mr. Allen's medical records. *Doc. 42-5; Doc. 42-6; Doc. 42-7, Doc. 54.*

hypertension, congestive heart failure, chronic obstructive pulmonary disease, and hepatitis. *Doc. 42-1 at 2*.

On October 18, 2023, Defendant Davis examined Mr. Allen after his hospitalization at St. Vincent. *Doc. 42-5 at 1*. She noted that Mr. Allen was in no distress and reported improvement since his hospitalization. At that encounter, Mr. Allen complained that he had not received medication in three days and that he was suffering from knee pain and a testicular hernia. *Id. at 2*. Defendant Davis ordered: (1) a chest x-ray and lab tests to evaluate Mr. Allen's cardiac status; (2) a cane to address Mr. Allen's complaints of knee pain; (3) monitoring of his hernia; and (4) medical records from Mr. Allen's previous hospitalizations. *Id. at 2-3*.

On October 26, 2023, Mr. Allen had a chronic care visit, where he complained that some days he felt "like he [was] having COPD exacerbation because he has too far to walk." *Doc. 42-6 at 1*. Defendant Davis ordered: (1) Alvesco (a long-term inhaler); (2) a chest x-ray; (3) continuation of Mr. Allen's medications, including his blood pressure medication; (4) an EKG; (5) lab tests; (6) optometry, cardiac, pulmonary, and liver consults; (7) medical shoes; and (8) a follow-up in one month. *Id. at 1-2*.

On November 1, 2023, Defendant Bolling had her first encounter with Mr. Allen during a treatment call. *Doc. 54-1 at 32-33*. On that date, Defendant Bolling's

name was listed with the following notation: "Call Encounter generated by Pending Treatment Order screen." *Id.*[3] No further details are included for that encounter.

On November 8, Defendant Bolling took Mr. Allen's blood pressure, which read 148/96. *Id. at 31*. Defendant Bolling did not indicate a need for any further treatment following that encounter.

On November 17, 2023, Mr. Allen presented to health services with complaints of chest pain and shortness of breath. *Doc. 54-1 at 29-30*. Non-party LPN Martha Rester administered Nitroglycerin and received orders to transfer Mr. Allen to the Emergency Department at the Jefferson Regional Medical Center ("JRMC"). *Id*. JRMC staff admitted Mr. Allen for further evaluation and treatment. *Doc. 54-4 at 1-3*. During his stay, Dr. Ayman Alshami performed a cardiac catheterization without intervention. *Id*.

On November 19, 2023, JRMC staff discharged Mr. Allen. *Doc. 54-3 at 1*. When he returned to the ADC, non-party RN Casandra Davis entered orders to increase Mr. Allen's Losartan and administer Spironolactone, Furosemide, and Atorvastatin. *Doc. 54-5 at 2*.

---

[3] Defendant Bolling had similar encounters with Mr. Allen at either treatment calls or segregation visits on November 1, 3, 6, 8, 20, 22, 24, 25, 26 and 29; December 1, 15, 27 and 29; January 15, 21, 26 and 29; February 9, 12, 21, 22, 23 and 26; and March 6, 9, 17, 18, 21, 22 and 25. *Doc. 54-1 at 3-5, 7, 8, 11, 12, 13, 16-18, 20, 23, 24, 26-28, 31-33*. No further details are included regarding those encounters.

On November 21, 2023, Defendant Davis saw Mr. Allen for a follow-up visit. *Doc. 54-6 at 1*. At that time, Defendant Davis ordered blood pressure checks for Mr. Allen to be conducted on Monday, Wednesday, and Friday of each week, increased Mr. Allen's Losartan dosage, and counseled Mr. Allen on lifestyle modifications. *Id*.

On December 13, 2023, Defendant Carter had her first encounter with Mr. Allen during a treatment call. *Doc. 54-1 at 24*. For that encounter, Defendant Carter's name was listed with the following notation: "Treatment Call Encounter generated by Pending Treatment Order screen." *Id*. No further details are included.[4]

On December 28, 2023, Defendant Davis saw Mr. Allen for complaints of elevated blood pressure. *Doc. 54-7 at 1*. At that time, Mr. Allen reported that he had stopped taking his blood pressure medication. *Id*. Defendant Davis counseled Mr. Allen as to medication compliance, adjusted his medication administration to the evening to alleviate negative effects, and ordered additional lab work. *Id*.

On January 4, 2024, Defendant Davis reviewed Mr. Allen's blood pressure readings and gave orders to administer Clonidine if Mr. Allen's systolic blood pressure was greater than 185 or his diastolic blood pressure was greater than 100. *Doc. 54-8 at 1*.

On January 10, 2024, Mr. Allen presented to health services with complaints of chest pain. *Doc. 54-10 at 1*. Upon evaluation, Defendant Bolling noted elevated

---

[4] Defendant Carter had similar encounters with Mr. Allen on December 13, March 13, and March 27. *Doc. 54-1 at 24, 9, 2*. No further details are included for those encounters.

blood pressure and wheezing. *Id*. ADC medical personnel determined that Mr. Allen should be transferred to JRMC for further evaluation and treatment. *Id. at 2*.

On January 12, 2024, JRMC medical staff discharged Mr. Allen with recommendations to increase his Lasix dosage. *Id. at 1*. Defendant Davis reviewed the JRMC discharge recommendations and increased Mr. Allen's Lasix dosage as recommended. *Id. at 1*.

On February 6, 2024, Defendant Davis examined Mr. Allen for complaints of a right testicle hernia and left-knee pain. *Doc. 54-11 at 1*. Defendant Davis ordered Diclofenac gel for his left-knee pain and a general surgery consult for possible hernia treatment. *Id*.

On February 23, 2024, Defendant Davis saw Mr. Allen for complaints of right armpit lumps. *Doc. 54-12 at 1*. Defendant Davis ordered Doxycycline. *Id*. During the encounter, Mr. Allen also requested to be moved to a barracks closer to the infirmary and kitchen. Defendant Davis recommended a barracks transfer. *Id*.

On February 27, 2024, non-party RN Casandra Davis responded to a medical call to report to Mr. Allen's barracks. *Doc. 54-13 at 1*. Upon arrival, Mr. Allen complained of chest pain and shortness of breath. *Id*. At that time, Defendant Davis ordered administration of Aspirin and Nitroglycerin, as well as an EKG. *Id. at 2*. The medication was effective, and Mr. Allen was able to return to his barracks. *Id*. At

that time, Defendant Davis again recommended a barracks transfer so that Mr. Allen could be closer to the infirmary and kitchen. *Id.*

On March 10, Mr. Allen presented to health services with complaints of chest pain. *Doc. 54-15 at 1*. Non-party LPN Eric McGee evaluated Mr. Allen. *Id. at 1-2*. Due to Mr. Allen's elevated blood pressure, Dr. Stuckey ordered that he be transferred to JRMC for further evaluation. *Id. at 1*. On March 12, 2024, JRMC medical staff discharged Mr. Allen without any new orders or new medication. *Id.*

On March 16, 2024, non-party nurse Rester evaluated Mr. Allen. *Doc. 54-1 at 8*. Mr. Allen tested positive for COVID. *Id. at 9*. At that time, Defendant Davis ordered chest congestion tablets, Acetaminophen, and Loratadine. *Id.*

### C.    Mr. Allen's Version of Events[5]

Mr. Allen's amended complaint alleges that when he arrived at the Pine Bluff Unit, Defendant Davis "with either Dr. Stukey or Dr. Horan prescribed their own regiment [sic] of medication (ignoring the cardiologist) and set me to have my blood pressure checked 3 times a week with [Defendants Bolling and Carter]." *Doc. 7 at 4-5*. Mr. Allen explains that, although for several weeks his blood pressure was "dangerously high," unidentified staff members simply told Mr. Allen to "go lay down." *Id. at 5*. As a result, Mr. Allen was sent to the hospital for further evaluation and treatment.

---

[5] Mr. Allen's version of events is taken from his amended complaint. *Doc. 7.*

After returning to ADC custody, unidentified medical staff members "ignored the cardiologist and added to or detracted from the medication he ordered." *Id*. As a result, Mr. Allen experienced high blood pressure readings, which the "night shift nurses" allegedly either ignored or falsified, and Mr. Allen was taken to the hospital due to his complaints of chest pain, shortness of breath, and "water build up around [his] heart." *Id*.

Mr. Allen explains that as a result of the medical staff's failure to provide him adequate medical treatment, he has suffered permanent damage to his heart, a reduction in his life expectancy, and higher risk of a stroke and/or heart attack. *Id*.

### D.    Medical Deliberate Indifference

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (omitting quotations and citation). At the summary judgment stage, Mr. Allen "must clear a substantial evidentiary threshold" to show that Defendants acted with deliberate indifference. *Johnson v. Leonard*, 929 F.3d 569, 576 (8th Cir. 2019). An inadvertent or negligent failure to provide adequate medical care does not amount to deliberate indifference.[6] *Id. at 575*. Instead, deliberate indifference requires

---

[6] Mr. Allen's pleadings appear to assert only federal constitutional claims and those are the only claims addressed. To the extent that Mr. Allen asserts a state-law medical malpractice claim, I recommend that the Court decline to exercise any jurisdiction of any such claim. See also 28 U.S.C. § 1367(c)(3) (district court may, once it has dismissed federal claims on which its original jurisdiction is based, decline to exercise jurisdiction over supplemental state law claims).

9

culpability akin to criminal recklessness, which is more blameworthy than negligence but "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Stated another way, Defendants can be held liable only if their actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Dulany*, 132 F.3d at 1240-1241 (citing *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990)). "Merely demonstrating that a prison doctor committed medical malpractice is insufficient to establish deliberate indifference." *Jackson v. Buckman*, 756 F.3d 1060, 1065-1066 (8th Cir. 2014) (internal citation omitted).

### 1. Defendant Carter

Defendants provide the affidavit of Nicholas Gowen, M.D., FACP, in support of their motion. *Doc. 42-1*. Dr. Gowen is Board Certified in Internal Medicine, a practicing hospitalist, and offers proposed expert testimony based on his education, training and experience. Based on his review of Mr. Allen's medical records, Dr. Gowen testifies that there is no record of Defendant Carter treating Mr. Allen in September or October 2023. *Doc. 42-1 at 1*. In addition, in his supplemental affidavit, Dr. Gowan testified that, between November 1, 2023 and April 1, 2024, Defendant Carter "routinely monitored Mr. Allen's condition" and "appropriately assessed Mr. Allen and followed provider orders." *Doc. 54-2 at 2*.

In his response to Defendants' motion for summary judgment, Mr. Allen questions the validity of Dr. Gowen's affidavit because Dr. Gowen never examined him and argues that Dr. Gowen relied on falsified or incomplete medical records. *Doc. 46 at 2*.

Mr. Allen has not come forward with any evidence disputing either Dr. Gowen's expertise or his testimony. Mr. Allen's unsubstantiated beliefs regarding the credibility of Dr. Gowen's testimony are insufficient to create a dispute of material fact. Likewise, Mr. Allen cannot create a dispute for the jury with a general challenge to the validity of his medical records. He fails to provide any verified documentation of what documents are missing or a detailed description of what the missing documents would show.

On this record, no reasonable factfinder could conclude that Defendant Carter violated Mr. Allen's constitutional rights.

I recommend that the claims against Defendant Carter be dismissed with prejudice.

### 2.    Defendant Bolling

Dr. Gowen further testifies in his affidavit that, based on his review of Mr. Allen's medical records, no record exists of Defendant Bolling treating Mr. Allen in September or October 2023. *Doc. 42-1 at 1*. In his supplemental affidavit, Dr. Gowan testified that, between November 1, 2023 and April 1, 2024, Defendant

11

Carter "routinely monitored Mr. Allen's condition" and "appropriately assessed Mr. Allen and followed provider orders." *Doc. 54-2 at 2*.

In his response to Defendants' motion for summary judgment, Mr. Allen contends that Defendant Bolling: (1) refused to record his "life threatening" blood pressure readings; and (2) his medical records show that Defendant Bolling examined him on November 1, 3, and 6, 2023. *Doc. 46 at 1-2*.

While Mr. Allen's medical records do not indicate that Defendant Bolling examined Mr. Allen during September or October 2023, according to Mr. Allen's medical records, on November 1, 3, 6, and 8, 2023, Defendant Bolling's name was listed with the following notation: "Treatment Call Encounter generated by Pending Treatment Order screen."[7] *Doc. 42-2 at 47-49*. Even assuming Defendant Bolling took Mr. Allen's blood pressure reading at those encounters, medical staff also examined him on November 4, 7, and 15, and did not report any indication of dangerously high blood pressure levels or a need for emergency treatment.[8] *Id. at 46-47*.

---

[7] As noted above, Defendant Bolling also had similar encounters with Mr. Allen during treatment calls or segregation visits on November 1, 3, 6, 8, 20, 22, 24, 25, 26 and 29; December 1, 15, 27 and 29; January 15, 21, 26 and 29; February 9, 12, 21, 22, 23 and 26; and March 6, 9, 17, 18, 21, 22 and 25. *Doc. 54-1 at 3-5, 8, 11-13, 16-18, 20, 23, 24, 26-28, 31-33*.

[8] At his November 4 encounter, non-party LPN Arlene Hixson Kirk took Mr. Allen's blood pressure and did not indicate any need for any further treatment. *Id*. at 48.

At his November 7 encounter, Mr. Allen complained of a rash. *Id. at 47*. There is no indication that Mr. Allen made any other medical complaint at that encounter.

On November 15, non-party LPN Christina Thrower examined Mr. Allen based on his complaints of high blood pressure. *Id. at 46*. At that examination, Mr. Allen reported that he had been consistently taking his medication and Nurse Thrower noted that Mr. Allen was to be

In addition, also on November 8, at a separate treatment call, Defendant Bolling took Mr. Allen's blood pressure, which read 148/96. *Id*. Defendant Bolling did not indicate a need for any further treatment following that encounter. While Mr. Allen may believe that Defendant Bolling may have falsely recorded his blood pressure reading, his unsubstantiated, speculative allegations alone are insufficient to create a material factual dispute.[9]

First, while Mr. Allen alleges that Defendant Bolling's failure to provide him adequate medical treatment causing him to suffer permanent damage to his heart, a reduction in his life expectancy, and higher risk of a stroke and/or heart attack, he has failed to "'place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment.'" *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005) (quoting *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir.

---

scheduled to be seen by provider. *Id*. Nurse Thrower did not indicate that Mr. Allen needed any further medical treatment at that time.

[9] In his response to Defendants' motion, Mr. Allen argues that his medical records are incomplete because Defendant Bolling failed to adequately record his blood pressure readings. To support his position, Mr. Allen relies on a January 24, 2024 grievance decision by Health Services Administrator Charlotte Gardner. *Doc. 7 at 8*. In the grievance Mr. Allen filed on December 28, 2023, he complained that his blood pressure had been running high for the previous four weeks and that unidentified medical staff members had not provided him adequate medical treatment. In Ms. Gardner's decision, she states, "Your medical condition is being monitored by the until level provider and your blood pressure readings have improved. However, all of your readings are not documented as ordered; therefore, I find your grievance with merit." *Id*. But, Mrs. Gardner's decision does not implicate Defendant Bolling in any wrongdoing or reference Defendant Bolling in any way. In addition, Ms. Gardner's decision further supports Defendants' position that Mr. Allen's blood pressure was consistently monitored. Finally, the failure to document blood pressure readings alone in this context is insufficient alone to allow a jury to conclude that Mr. Allen was subjected to constitutionally inadequate medical care.

1997)). At the summary judgment stage, such an omission is fatal to Mr. Allen's medical deliberate indifference claim. See *Corwin v. City of Independence, MO*, 829 F.3d 695 (8th Cir. 2016) (summary judgment appropriate where pretrial detainee failed to produce verifying medical evidence showing a detrimental effect due to delay in medical treatment); and *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 2001) (a prisoner must demonstrate that the delay in obtaining medical treatment adversely affected his prognosis, or that defendants ignored an acute or escalating situation).

Second, Mr. Allen has not provided any expert testimony that the alleged permanent heart damage, reduction in his life expectancy, and higher risk of a stroke and/or heart attack that Mr. Allen suffered was a result of Defendant Bolling's conduct. Although "[a] causal connection between an event and an injury may be inferred in cases in which a visible injury or a sudden onset of an injury occurs [], when the injury is a 'sophisticated' one, i.e., requiring surgical intervention or other highly scientific technique for diagnosis, proof of causation is not within the realm of lay understanding and must be established through expert testimony." *Robinson v. Hager*, 292 F.3d 560, 564 (8th Cir. 2002) (quoting *Turner v. Iowa Fire Equip. Co.*, 229 F.3d 1202, 1210 (8th Cir. 2000)). Therefore, Mr. Allen must have expert testimony to prove that Defendant Bollings' conduct caused him to suffer permanent

14

heart damage, a reduction in his life expectancy, or a higher risk of a stroke and/or heart attack.

Finally, Mr. Allen has failed to present any evidence that: (1) Defendant Bolling recognized that any "substantial risk of harm" to Mr. Allen's health and safety existed; and (2) "knew that [her] conduct was inappropriate in light of that risk." *Smith v. Lisenbe*, 73 F.4th 596, 660 (8th Cir. 2023).

As a result, on this record, no reasonable factfinder could conclude that Defendant Bolling was deliberately indifferent to Mr. Allen's serious medical needs.

I recommend that the claims against Defendant Bolling be dismissed with prejudice.

### 3.    Defendant Davis

According to Dr. Gowen's testimony, during the relevant time period, Defendant Davis ordered: (1) a chest x-ray and lab tests to evaluate Mr. Allen's cardiac status; (2) a cane to address Mr. Allen's complaints of knee pain; (3) monitoring of his hernia; (4) medical records from Mr. Allen's previous hospitalizations; (5) Alvesco (a long-term inhaler); (6) continuation of Mr. Allen's medications, including his blood pressure medications; (7) an EKG; (8) lab tests; (9) optometry, cardiac, pulmonary, and liver consults; (10) medical shoes; (11) follow-up examinations; (12) that Mr. Allen be transferred to the Emergency Department for evaluation and treatment; and (13) "appropriately implemented

15

recommendations of providers at Jefferson Regional Medical Center." *Doc. 54-2 at 2, Doc. 42-1 at 1-2*. Dr. Gowen concludes that Defendant Davis "properly assessed Mr. Allen and ordered appropriate medications and treatments to manage Mr. Allen's condition." *Doc. 54-2 at 2*. Mr. Allen has failed to provide any evidence contradicting Dr. Gowen's testimony. "In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that he did not feel he received adequate treatment." See *Cejvanovic v. Ludwick*, 923 F.3d 503, 508 (8th Cir. 2019); *Nelson v. Shuffman*, 603 F.3d 439, 449 (8th Cir. 2010) (same).

In addition, Mr. Allen has not provided any expert testimony that the alleged permanent heart damage, reduction in his life expectancy, and higher risk of a stroke and/or heart attack that Mr. Allen suffered was a result of Defendant Davis' conduct. See *Robinson v. Hager, supra*. Such an omission is fatal to Mr. Allen's claims against Defendant Davis.

Finally, although Mr. Allen generally alleges that Defendant Davis altered his medication in some way, he has failed to provide any evidence to support such a claim. Rather, Mr. Allen's medical records indicate that Defendant Davis consistently monitored the administration of his medication and adjusted his medication in accordance with instructions from JRMC medical personnel.

16

On this record, no reasonable factfinder could conclude that Defendant Davis was deliberately indifference to Mr. Allen's serious medical needs.

I recommend that the claims against Defendant Davis be dismissed with prejudice.

## IV.   Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1.    Defendants' motion for summary judgment (*Doc. 40*) be GRANTED.

2.    Mr. Allen's claims against Defendants Davis, Bolling, and Carter be DISMISSED, with prejudice.

3.    Judgment be entered in favor of Defendants Davis, Bolling, and Carter.

4.    The Clerk be instructed to close this case.

DATED 20 January 2026.

_____
UNITED STATES MAGISTRATE JUDGE